## STATE v. HENRY JONES.

(Filed 14 September, 1921.)

**1. Appeal and Error—Assignments of Error—Record—Objections and Exceptions.**

An assignment of error must be upon exceptions appearing ·of record duly taken, though exceptions to the general charge, or refusal to instruct, or giving instructions prayed for, may be taken after the trial, they also must be properly assigned and appear in the record, and an assignment of error otherwise taken will not be considered on appeal.

**2. Appeal and Error—Presumptions—Record—Burden of Proof.**

On appeal to this Court, the presumption is in favor of the correctness of the trial in the Superior Court, and the appellant must show error by the record and an assignment of error, which, if it does not so appear, will not be considered.

**3. Same—Instructions—Homicide.**

Where it appears in the record on appeal that a trial for a homicide was conducted on both sides upon the question of the defendant being guilty of murder in the second degree or his acquittal, and it is stated in the case that the trial judge, at the conclusion of the argument, charged the jury at length with respect to the case, and stated fully the contentions of the State and the defendant, to which there was no exception, the defendant's assignment of error that the judge failed to charge the jury upon the question of manslaughter, or there being no evidence of it, will be disallowed as contradicting the case.

**4. Appeal and Error—Reversible Error—Trials—Instructions—Homicide.**

The judge's charge, upon a trial for a homicide, that the jury must be convinced "to a moral certainty" of the defendant's guilt, and that they should return a verdict of guilty if they so found beyond a reasonable doubt is not reversible error.

**5. Appeal and Error—Homicide—Instructions—Record—Harmless Error.**

Where the charge of the court to the jury is not set out on appeal in full, in a trial for a homicide, and it is stated in the record that the judge charged the jury that their verdict would be "guilty" if they found beyond a reasonable doubt that the defendant committed the homicide, though the part of the charge so appearing may be somewhat brief and general, it will be considered in connection with the statement appearing of record

that the court correctly charged the jury, and will not, therefore, be held for reversible error, as this Court cannot see that, when the charge is construed as a whole, it was not correct.

**6. Appeal and Error—Instructions—Record—Presumptions—Objections and Exceptions.**

Where the charge of the court is not set out in the record on appeal, the presumption is in favor of its correctness, and that the appellant would otherwise have excepted, and especially so when it is stated that the judge charged the jury at length concerning the case.

**7. Appeal and Error—Instructions, How Construed.**

On appeal to the Supreme Court the charge of the trial judge to the jury must be construed as one connected whole, and not by detached portions.

THE defendant, with others, was indicted in the court below for the murder of James Smith, and was convicted of murder in the second degree. The solicitor for the State withdrew the charge of murder in the first degree. There was no suggestion from defendant's counsel that the question of manslaughter was involved, or that there was any evidence of the same. No instruction was requested on that subject, and no reference to manslaughter made by defendant until the defendant, after verdict and judgment, filed his exceptions, and upon them based his assignments of error, in which he made his first reference to manslaughter, when he excepted because the court failed to charge as to manslaughter. The substance of the record on this point is as follows: The case was fully argued by both the State and the defendant, neither the State nor the defendant's counsel discussing any question except the guilt or innocence of the defendants on the charge of murder in the second degree. No allusion was made in the course of the argument by either the solicitor or associate counsel for the State, or by any counsel for either of the defendants, to the guilt or innocence of the defendants of any crime except murder in the second degree, and specifically no contention was made either by the State or the defense that the defendant was guilty of either murder in the first degree or manslaughter. The only question argued being whether the defendants were guilty or innocent of the charge of murder in the second degree. During the course of the argument for the defendant, the defendant's counsel read the statute defining the crime of murder in the second degree to the jury, and argued to the jury the punishment that was permissible upon a conviction under the same, and told the jury that if the defendants were convicted they would be punished by imprisonment from two to thirty years, in the discretion of the court. The solicitor likewise admitted to the jury that the statute had been correctly read, and that the punishment suggested by the defendants' counsel was possible upon a conviction, but argued to the jury that the matter of punishment was not for

their determination, but should and could be left to the court to administer in justice and mercy.    At the conclusion of the argument, the court charged the jury at length with respect to the case, stating fully the contentions of both the State and the defendants, to all of which there was no exception.

There was testimony to the effect that one of the witnesses had heard the defendant fighting the deceased the night of the homicide, and that, before the homicide, he had heard him threaten to kill him.    There was evidence tending to show that McArthur and Smith were killed with a heavy single-tree, made of solid oak and having iron bands at each end of it, and which was a deadly weapon.    The indentations in the skull of McArthur corresponded with the shape of the ends of this single-tree. The dead bodies of McArthur and Smith were hauled in a cart belonging to John Jones (which was borrowed by defendant, Henry Jones) to the canal near Henry's home, and thrown into the canal, Henry having said that he wanted the cart to carry the boys (McArthur and Smith) to the canal and "chunk them in."    There was evidence that blood stains were found on Henry's kitchen floor, and the single-tree in the bottom of the cart.    There was other evidence tending to identify the defendant as the one who committed the homicide in addition to his admission in jail that he and his wife had killed the boys, and that he intended to "put it on Dad," and also his threat to kill Smith because of some real or fancied grievance.

The jury, under the evidence and the charge of the court, convicted the defendant of murder in the second degree, and from the judgment upon the verdict he appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Daniel & Carter, Clifton Bell, and Mann & Mann for defendant.*

WALKER, J., after stating the case:   The principal exception of the defendant is that the court failed to define manslaughter, or to charge that the jury could find the defendant guilty of manslaughter or murder in the second degree.    The full charge is not in the record.    We will first consider, therefore, whether it appears from the record that the court failed to give any such instruction.    We are governed, in this respect, entirely by the record, which cannot be altered by a mere exception or assignment of error.    Exceptions must be confined to something alleged as error which appears in the record, and an assignment of error must ordinarily be based upon an exception duly taken.    Errors in the charge may, of course, be assigned the first time in the case on appeal, but the error must appear in the record and not only in the assignment.

This is necessarily true, because if the showing of error depended upon the mere allegation of it, when the error did not appear in the record, it would be useless to consider the record, but only the assignment, as to the ruling of the court. Of course this would not do, and could not for a moment be accepted as a principle in the law of appellate procedure. The law is the other way, as we do not presume error was committed, but the opposite, and he who alleges that there was error must show it by the record and not by assertion only, an assignment being of no avail unless it rests upon matter appearing in the record or case on appeal. *Wilson v. Wilson,* 174 N. C., 755; *In re Smith's Will,* 163 N. C., 466; *Todd v. Mackie,* 160 N. C., 352; *Allred v. Kirkman, ib.,* 392; *Worley v. Logging Co.,* 157 N. C., 490. So in this case we must presume the correctness of the trial below, because we cannot see any such error in it as is alleged, as it has not been made to appear. The defendant assigned as error that the judge failed to charge the jury as to manslaughter. Not only does this not appear in the record, as the full charge is not here, but what does appear contradicts it, as the record states that Allen, J., who presided at the trial, "at the conclusion of the argument, charged the jury, at length, with respect to the case, and stated fully the contentions of the State and the defendant, to all of which there was no exception." And this disposes of the assignment as to manslaughter, as it excludes the idea that there was no instruction as to it, the statement in the record being sufficient to show that the charge embraced every phase of the case. If so, there can be no error in the charge, even if there was evidence to support the contention as to manslaughter. The appellant has not, therefore, shown that there was no instruction as to manslaughter, and as was held in the above cited cases and *Powers v. City of Wilmington,* 177 N. C., 361, "Appellant must show error; we will not presume it, but he must make it appear plainly for the presumption (as to the correctness of the trial) is against him," citing *In re Smith's Will, supra.* The same was said in *Baggett v. Lanier,* 178 N. C., 129, the language in that case, at p. 131, being: "The burden of showing error is upon him, for in the absence of anything to the contrary, we presume that the ruling of the court was correct." And the following, which was said in *Bell v. Harrison,* 179 N. C., 190, at p. 198, is also pertinent and analogous to the question here: "A party cannot complain of an instruction given at his own request; nor will an assignment of error be sustained which conflicts with the statement of the case upon the question whether the instruction was so given. The judge's statement as to what was done must stand, in the absence of any correction of the record by *certiorari* or otherwise." As held in *S. v. Harris,* 181 N. C., 600: "The statement of the case on an appeal imports absolute verity." We must, therefore, accept it as we

find it, and can add nothing to it nor can we take anything from it. The appeal must stand or fall by what we find in the case, without regard to any assignment of error, unless supported by it.

As the whole of the charge is not here, we are unable to know what it was, or whether what is not here embraced a sufficient charge as to manslaughter. We only know that defendant deemed it adequate, as he did not ask for any further instruction. We are not permitted to draw an inference favorable to the defendant merely because the record is silent as to a part of the charge. We should presume to the contrary, as the burden is upon the defendant to show any error. The fact that counsel for defendant chose to narrow the discussion and confine his argument to second degree murder does not alter the case. That is their act and not that of the court. They may have thought, and perhaps rightly so, that the evidence as to manslaughter, if there was any at all, was entirely too conjectural and would not lead the jury to adopt that view. It was hardly as substantial or probative in character as was the evidence in *Byrd v. Express Co.,* 139 N. C., 273.

We have discussed this exception upon the assumption that there was evidence of manslaughter, which is exceedingly doubtful, as all the evidence tends to show that defendant was the aggressor, and, if there was a quarrel that he brought it on and killed the deceased with malice, and not in hot blood, during a sudden quarrel, or upon legal provocation.

The exception and assignment of error are not, therefore, sustainable, and must be overruled.

All that we have said is based on the assumption that if there was evidence of manslaughter it was the duty of the judge to give a proper instruction in regard to it, whether he was asked to do so or not. This was decided in *S. v. Merrick,* 171 N. C., 788, where we held, as shown by the third head-note: "Upon a trial for murder a verdict for a less grade of crime is permitted, and where the indictment is for murder, and there are facts in evidence tending to reduce the crime to manslaughter, it is reversible error for the trial judge not to submit this phase to the jury, under a proper charge, though not requested by the defendant to do so, and although he has offered to submit to a verdict of murder in the second degree, which has been refused," citing Rev., 535.

The exception to the judge's charge on reasonable doubt is untenable. He did say that the jury must be convinced "to a moral certainty," but he added: "If you find from the evidence that the defendants, or either of them, committed the homicide, and you so find beyond a reasonable doubt, you will return a verdict of guilty as to the one or ones whom you so find." This was stating the rule generally, but there was no request to state it more definitely, and in the absence of such a request the error, if any, is not available to the defendant. *Simmons v. Davenport,* 140 N. C., 407.

50—182

There is no special formula of the law for charging upon the doctrine of reasonable doubt. It was said in *S. v. Adams,* 138 N. C., 688, 695 : "There is no particular formula by which the court must charge the jury upon the intensity of proof. All that the law requires is that the jury shall be clearly instructed that unless, after due consideration of all the evidence, they are 'fully satisfied,' or 'entirely convinced,' or 'satisfied beyond a reasonable doubt' of the guilt of the defendant, it is their duty to acquit, and every attempt on the part of the courts to lay down a 'formula' for the instruction of the jury, by which to 'gauge' the degrees of conviction, has resulted in no good. We reproduce these words from the opinion delivered by *Pearson, C. J.,* in *S. v. Parker,* 61 N. C., 473, as they present in a clear and forcible manner the true principle of law upon the subject. The expressions we sometimes find in the books as to the degree of proof required for a conviction are not formulas prescribed by the law, but mere illustrations. *S. v. Sears,* 61 N. C., 146; *S. v. Knox, ib.,* 312; *S. v. Norwood,* 74 N. C., 247. The law requires only that the jury shall be fully satisfied of the truth of the charge, due regard being had to the presumption of innocence and to the consequent rule as to the burden of proof," citing *S. v. Knox, supra.* The dictionaries define "moral certainty" as "a very high degree of probability, although not demonstrable as a certainty; a probability of so high a degree that it can be confidently acted upon in the affairs of life; as that there is a *moral certainty* of his guilt." This expression that the evidence must produce a moral certainty of guilt was not in any degree prejudicial to the defendant, especially when it was immediately followed by what was said as to reasonable doubt, giving the prisoner the full benefit of that doctrine. As the full charge is not before us, it may be that the learned judge further elucidated the doctrine, and we would not impute error upon mere conjecture that he did not do so, even if this part of the charge which is before us was not precisely correct. But we see no substantial error in it as it stands.

The charge that if the jury found beyond a reasonable doubt the defendant committed the homicide, the verdict should be guilty was somewhat too brief and general, but not so when considered in connection with the statement in the record that the judge charged the jury at length as to the case, and stated fully the contentions of the parties, to which there was no exception. In other words, he charged the jury correctly as to the case or counsel would have excepted. It is the fair presumption that they would have excepted if there was error in the charge. We could not well presume otherwise with such able counsel as the defendant had to protect his interests, and it is a fair and reasonable inference from this statement in the record that the charge covered the whole range of questions involved in it, including, of course, instruc-

tions as to murder in the second degree, manslaughter, and excusable homicide, and that the verdict should designate the particular degree of homicide if the jury found defendant guilty of either one below murder in the first degree, which had been eliminated. As we have shown, the presumption is that the court instructed the jury correctly. When the charge is thus considered as an entirety, we cannot conclude that the jury misunderstood or disobeyed explicit instructions given to them. That the charge must be construed as one connected whole, and not by detached portions, has grown into an axiom of the law. *S. v. Exum,* 138 N. C., 599; *Kornegay v. R. R.,* 154 N. C., 389; *In re Will of Hinton,* 180 N. C., 206, 216; *Haggard v. Mitchell, ib.,* 255, 258; *S. v. Chambers, ib.,* 705, 708, and the many other intervening cases where the principle has been approved. If the charge is read under this rule with the proper presumption in favor of its correctness constantly kept in mind, we can have no doubt that the jury fully understood what they were trying, and were not led into the error of supposing that the mere commission of the homicide would justify them in returning a verdict of murder in the second degree, or even for manslaughter. The course of the trial, as it appears by the case on appeal and the verdict, shows that the jury clearly understood the case and the law "arising thereon." We do not see how they could have decided otherwise than they did. If they have found a wrong verdict, it was not the fault of the judge. Great stress was laid upon second degree murder by counsel in argument, in the hope and belief, perhaps, that the jury would be more apt to choose to acquit as between a verdict for the higher felony and one of "not guilty," than they would as between manslaughter and acquittal, and to those acquainted with court trials, this was a shrewd, and to a trained lawyer a not unusual view to take of the matter.

The defendant was no doubt most ably defended in the court below, and we know that Mr. Carter made an exceptionally strong defense of him before us.

The other exceptions, not specially discussed by us, although not mentioned in the defendant's brief, have been fully considered and found to be without any merit.

We find no error in the case or the record.

No error.